NOT RECOMMENDED FOR PUBLICATION

No. 02-3172

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

MARY CLEVELAND,

Petitioner-Appellant,

v.

FEDERAL EXPRESS CORPORATION,

Defendant-Appellee.

_____/

FILED

NOV 2 8 2003

LEONARD GREEN, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO

NOT RECOMMENDED FOR FULL-TEXT
PUBLICATION
Sixth Circuit Rule 28(g) limits citation to specific situations.
Please see Rule 28(g) before citing in a court
in the Sixth Circuit. If cited, a copy must be served on other
parties and the Court.
This notice is to be prominently displayed if this decision
is reproduced.

BEFORE:    BOGGS, Chief Judge; Norris and CLAY, Circuit Judges.

CLAY, Circuit Judge.  Plaintiff, Mary Cleveland, appeals from an order, entered by the

district court on January 11, 2002, granting summary judgment to Defendant, Federal Express

Corporation, on claims pursuant to the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12211,

and the Pregnancy Discrimination Act, § 42 U.S.C. § 2000e(k), and various other federal and state

law claims.  For the reasons set forth below, we **AFFIRM** the district court in part and **REVERSE**

the district court in part.

## BACKGROUND

### Procedural History

On May 8, 2000, Plaintiff filed a complaint alleging disability discrimination in violation of

the ADA and Ohio Rev. Code § 4112.02, race discrimination in violation of Title VII of the Civil

No. 02-3172

Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, pregnancy discrimination in violation of the PDA

and Ohio Rev. Code § 4112.02, and breach of contract under state law. Defendant filed a motion

for summary judgment, which the district court granted on January 11, 2002.

On February 8, 2002, Plaintiff filed a timely notice of appeal. On appeal, Plaintiff contests

only the district court's rulings on the ADA and PDA claims.

### *Substantive Facts*

As set forth by the district court, Plaintiff was employed by Defendant for more than a

decade, during which time she received several promotions. In January of 1987, Plaintiff began

work as a Customer Service Representative at Defendant's Blue Ash, Ohio call center, which is in

the Cincinnati, Ohio area. Approximately six months later, she was promoted to be an Operations

Manager. In 1995, she was promoted to be a Customer Service Support Manager.

While employed by Defendant, Plaintiff gave birth to three children. While working as a

Senior Customer Service Representative, Plaintiff took her first maternity leave from Defendant, to

give birth to her second child, who was born in 1988. While working as an Operations Manager,

Plaintiff took her second maternity leave to give birth to her third child, who was born in 1995. Due

to difficulties with this pregnancy, her leave extended to 128 days. Shortly after her return from her

second leave, Plaintiff was promoted to be a Customer Service Support Manager. Soon after the

1995 birth, Plaintiff was diagnosed with systemic lupus. Plaintiff's deposition states that after

learning about Plaintiff's diagnosis, Randy Overton, her direct supervisor (Respondent's Brief at 3),

made disparaging statements about lupus:

> I believe . . . his wife was [formerly] married to someone who had lupus . . . . Her
> ex-husband had lupus, and Randy was dealing with the effect of taking on a

2

No. 02-3172

> relationship with her and her disabled son. . . . [H]e would make comment[s] about
> her [ex-]husband just being lazy, that he really didn't have an illness, that lupus really
> didn't exist. He made comments about he was just sick of it in terms of how it
> impacts his family.

(J.A. at 964-66.) Plaintiff stated that "every single manager . . . at one time or another" had

"probably heard" a statement by Overton on the topic of lupus. (J.A. at 966.)

In June or July of 1997, Plaintiff learned that she was pregnant with her fourth child.

Although normally her lupus was treated with medication, Plaintiff's medications could not be taken

during pregnancy. Thus, upon learning that she was pregnant with her fourth child, Plaintiff was

advised by physicians to take medical leave in July 1997. Plaintiff initially informed Defendant that

she would begin her leave on July 28, 1997. But she did not start leave until August 20, 1997. On

August 14, 1997, Plaintiff had sent an email to Randy Overton–who had also been her supervisor

during her 1995 leave–informing him that once her leave commenced she would not be able to return

until the delivery of her child, during or after February of 1998.

Defendant's medical leave policy prohibited employees on leave from returning prior to

receiving a release from a treating physician. The leave policy also stated,

> Positions for employees on medical leave remain available for a minimum of 90
> calendar days. At the end of the 90 days, the employee's manager makes a
> determination based on departmental operating requirements to either replace the
> employee on leave or allow the position to remain unfilled. If a decision is made to
> fill the position, the manager must notify the employee in writing of the manager's
> intention to fill the position. Under no circumstance should this be done earlier than
> the 91st day.

(J.A. at 272.) On October 29, 1997, Greg Barkdull, a manager from the Human Capital Management

Committee responsible for coordinating medical leaves, contacted Plaintiff, and informed her that

it was necessary for Defendant to post and fill Plaintiff's position. This contact was less than ninety

No. 02-3172

days after the start of Plaintiff's leave, and thus may have violated Defendant's leave policy.[1]

Defendant had posted the opening of Plaintiff's position in late October of 1997, and later filled the

position with Jerry Kamphaus, who had been an Operations Manager prior to having assumed

interim responsibility for Plaintiff's position upon the start of her leave in August 1997.  (J.A. at

938.)  According to Plaintiff, Defendant had an unofficial policy of appointing interim "acting

managers," instead of permanent replacements, to temporarily assume the responsibilities of an

employee on medical leave, until the employee's return to his or her position.  (J.A. at 273-74.)

On March 30, 1998, Plaintiff's physician gave her a release to return to work.  Soon

thereafter she forwarded the release to Barkdull.  On April 14, 1998, Plaintiff was offered a position

in the Fort Lauderdale Customer Service Center.  She declined this position, because she did not

want to relocate.  She was then placed on personal leave for a ninety-day period, to allow her to seek

another position with Defendant.  She was denied the positions she applied for, being told that one

position had already been filled, that she lacked qualifications for a second, and that her application

for a third was late.  On August 13, 1998, some time after her ninety-day personal leave ended,

Plaintiff's employment was terminated.

## DISCUSSION

On appeal, Petitioner challenges the district court's grant of summary judgment for defendant

on the claims under the Americans with Disabilities Act and the Pregnancy Discrimination Act.  We

review the grant or denial of summary judgment *de novo*.  *Eastman Kodak Co. v. Image Technical*

---

[1]As quoted, the policy states, "Under no circumstance should *this* be done earlier than the 91st day." (emphasis added).  It is not clear if "this" refers to filling the position or to the manager's notifying the employee in writing of the intent to fill the position.

No. 02-3172

*Servs.*, Inc., 504 U.S. 451, 466 n.10, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992); *Johnson v. Econ. Dev. Corp.*, 241 F.3d 501, 509 (6th Cir. 2001); *Buckeye Cmty. Hope Found. v. City of Cuyahoga Falls*, 263 F.3d 627, 633 (6th Cir. 2001). Summary judgment is appropriate when there is no genuine issue of material fact, thereby entitling the movant to a judgment as a matter of law. *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 882 (6th Cir.1996). In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Supreme Court explained that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. Our "inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of evidence that the plaintiff is entitled to a verdict." *Id.*

The "mere possibility" of a factual dispute is not sufficient to create a triable case. *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir.1986). To defeat summary judgment, the plaintiff "must come forward with more persuasive evidence to support [his] claim than would otherwise be necessary." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). If the defendant successfully demonstrates, after a reasonable period of discovery, that the plaintiff cannot produce sufficient evidence beyond the bare allegations of the complaint to support an essential element of his or her case, summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When determining whether to reach this conclusion, we view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398

No. 02-3172

U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710

(6th Cir.2000); *Smith v. Thornburg*, 136 F.3d 1070, 1074 (6th Cir.1998).

## I.

We first review the Americans with Disabilities Act ("ADA") claim. The ADA makes it

unlawful for an employer to "discriminate against a qualified individual with a disability." 42 U.S.C.

§ 12112(a); *see also* 42 U.S.C. § 12102(2) (defining "disability" as "(A) a physical or mental

impairment that substantially limits one or more of the major life activities of such individual; (B)

a record of such an impairment; or (C) being regarded as having such an impairment"). The ADA

defines the protected class: "The term 'qualified individual with a disability' means an individual

with a disability who, with or without reasonable accommodation, can perform the essential

functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

The requirements for an ADA claim are that the individual (1) is disabled within the meaning

of the Act, (2) is qualified to perform the essential functions of the job held or desired with or

without reasonable accommodation, and (3) suffered an adverse employment decision because of

the disability. *Burns v. Coca-Cola Enters., Inc.*, 222 F.3d 247 (6th Cir. 2000).

In the present case, the dispute centers upon the second requirement. The parties disagree

as to whether medical leave for the period of time that Plaintiff was pregnant and unable to take her

lupus medication would have constituted a reasonable accommodation. The analysis does not end

after a plaintiff makes a showing of a reasonable accommodation. Equal Employment Opportunity

Commission regulations state that under the ADA an employer need not make a reasonable

accommodation if the employer "can demonstrate that the accommodation would impose an undue

6

No. 02-3172

hardship on the operation of its business." 29 C.F.R. § 1630.9(a); *see Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1046 (6th Cir. 1998).

In certain instances, it has been held that the reasonable-accommodation-without-undue-hardship standard does not mandate that employers grant medical leave. Where an employee is incapacitated from work by a condition whose end cannot be determined with any certainty, the ADA does not always require that the employer allow indefinite leave. *E.g., Boykin v. ATC/VANCOM of Colo., L.P.*, 247 F.3d 1061, 1064 (10th Cir. 2001). In *Boykin*, summary judgment in favor of the defendant was upheld, where the employee could not work for one year after a transient ischemic attack, and there was no assurance that additional attacks would not occur during a leave, potentially extending the leave for an indeterminate period of time. *Id.*

However, this Court has declined to adopt a bright-line rule defining a maximum duration of leave that can constitute a reasonable accommodation. In *Cehrs v. Northeast Ohio Alzheimer's Research Center*, 155 F.3d 775, 782 (6th Cir. 1998), we stated, "Upon reflection, we are not sure that there should be a *per se* rule that an unpaid leave of indefinite duration (or a very lengthy period, such as one year) could never constitute a 'reasonable accommodation' under the ADA. It is not clear why unpaid leave should be analyzed differently from any other proposed accommodation under the ADA."

The present case does not push us to the boundaries of our reasoning in *Cehrs*. The initial leave requested by Plaintiff was approximately one-half year, considerably less than the one-year period that we deemed "a very lengthy period," in *Cehrs*. *Id.* The pregnancy that occasioned Plaintiff's first lupus-related leave of absence from her employer was for the bearing of her fourth

7

No. 02-3172

child. (J.A. at 26.) Unlike the plaintiff in *Boykin*, Ms. Cleveland was not suffering from an acute

medical condition that might well persist indefinitely, so as to lengthen the initial leave period by

an indefinite duration. As we stated in *Cehrs*, "[t]he employee's initial burden of articulating a

reasonable accommodation need not be onerous." 155 F.3d at 781. In the present case, we cannot

say that as a matter of law Plaintiff could not carry the burden of showing that a medical leave would

have been a reasonable accommodation of her lupus during her pregnancy.

Even where, as here, a plaintiff might be able to demonstrate a reasonable accommodation,

a defendant can still be granted summary judgment, if there are no genuine issues of material fact

controverting the conclusion that the reasonable accommodation would impose an undue hardship

on the employer. We explained in *Cehrs* that, to show that a requested reasonable accommodation

poses undue hardship, the employer must carry the burden of proof, based upon a systematic

analysis:

> If the employee establishes that a reasonable accommodation is possible, then the
> employer bears the burden of proving that the accommodation is unreasonable and
> imposes an "undue hardship" on the employer. *Monette* [*v. Electronic Data Sys.
> Corp.*], 90 F.3d [1173,] 1186 n.12 [(6th Cir.) (1996)]. When considering undue
> hardship, the ADA requires the courts to consider the following factors:
>
> (i) the nature and cost of the accommodation needed under this chapter;
>
> (ii) the overall financial resources of the facility or facilities involved in the provision
> of the reasonable accommodation; the number of persons employed at such facility;
> the effect on expenses and resources, or the impact otherwise of such accommodation
> upon the operation of the facility;
>
> (iii) the overall financial resources of the covered entity; the overall size of the
> business of a covered entity with respect to the number of its employees; the number,
> type, and location of its facilities; and

8

No. 02-3172

(iv) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity.

42 U.S.C. § 12111(10)(B).

155 F.3d at 781-82.

In the present case, we cannot say that Defendant has put forth sufficient evidence probative of the four factors (or other considerations) to allow a grant of summary judgment. Defendant argues that the present case is distinguishable from *Cehrs*. Defendant states that in *Cehrs* the plaintiff had presented evidence that medical leave of the duration requested was routinely granted to other employees but had been denied to the plaintiff. In the present case, Plaintiff did not put forth evidence that other employees had received the amount of leave that Plaintiff would have been needed. (Respondent's Brief at 15.)

We have never held that the undue hardship standard requires Plaintiff to show that employees who are not disabled received equal or better treatment. The ADA does not require employers to make any accommodation or to sustain any hardship on account of employees who are not disabled. An employer may refuse to grant any medical leave to an individual who wishes to have cosmetic surgery or other corrective surgery for a condition that does not "substantially limit[] one or more of the major life activities of such individual," 42 U.S.C. § 12102(2) (defining "disability" under the ADA), without facing the possibility of an ADA claim. If the employer in *Cehrs* decided to grant medical leave to non-disabled individuals, then that may have been probative of the fact that the medical leave requested by the plaintiff would not have constituted an undue hardship. But a plaintiff may still prevail absent evidence of this nature.

9

No. 02-3172

The other undue hardship argument by Defendant relies on the testimony of supervisors Don

Bland and Randy Overton. (Respondent's Brief at 16-17.) Defendant quotes Overton as stating,

> With [Plaintiff's former] position, she's the only one in the center. The job duties for
> her group were scheduling, payroll, reception, facilities, things that can't be covered
> by . . . six other people out in the call center. So at that point, you have to have an
> acting manager which does put an undue burden on the call center because the acting
> manager, unless it can be someone else from her work group, which in this case it
> could not be, the acting manager is going to have to come off the operations floors
> which means you pull a manager completely off the floor and out of their [sic] work
> group and then the center is going to have to back that up somehow.

(Respondent's Brief at 17.)  Overton's statement speaks to the first and fourth factors for undue

hardship. *Cehrs*, 155 F.3d at 781-82 (quoting 42 U.S.C. § 12111(10)(B), which states that the first

factor is "the nature and cost of the accommodation needed under this chapter," and the fourth factor

is "the type of operation or operations of the covered entity, including the composition, structure, and

functions of the workforce of such entity.").  But Overton is silent on the second and third factors,

which pertain to the overall financial condition of the facility at which an employee works and of

an employer, as a whole. *Id.*  Nor does Defendant elsewhere set forth any analysis of the second and

third factors.  Consequently, accepting the Overton statement as accurately representing the first and

fourth factors for undue hardship, we think that reasonable jurors could find by a preponderance of

evidence that the plaintiff is entitled to a verdict.  Reasonable jurors might find that Defendant failed

to carry its burden of showing undue hardship, because Defendant was silent as to the second and

third factors.

Moreover, Overton's testimony relating to undue hardship analysis need not be accepted as

factually accurate at this stage in the proceedings.  Viewing the evidence and drawing all reasonable

inferences in the light most favorable to Plaintiff as the non-moving party, we must accept as true

10

No. 02-3172

Plaintiff's allegations about the numerous disparaging statements that Overton had previously made about lupus. Thus, all of the testimony by Overton as to the undue hardship of Defendant, as a business, must be substantially discounted in our review of Defendant's motion for summary judgment. We must draw the inference that Overton's business judgment was clouded by his animosity towards individuals who have lupus. Overton's testimony is central to Defendant's undue hardship argument, in its appellate brief–which cites to the testimony of only two individuals, Overton and Bland, and which quotes Overton at length but does not quote Bland.

Because Defendant is silent as to the second and third factors for undue hardship, and because, in the present posture of the case, we cannot accord Overton's statement as to undue hardship controlling weight, it is clear that Defendant has not presented sufficient evidence of undue hardship to sustain a summary judgment motion. A genuine issue of material fact remains as to whether granting Plaintiff medical leave until Plaintiff delivered her baby and was able to resume taking lupus medication would have imposed an undue hardship on Defendant. Accordingly, we reverse the district court's grant of summary judgment on the ADA claim.

## II.

We next review the Pregnancy Discrimination Act ("PDA") claim. Title VII of the Civil Rights Act of 1964 prohibits discrimination "because of . . . race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).[2] After a 1976 Supreme Court case held that Title VII did not

---

[2]Petitioner's claim under the Ohio Pregnancy Discrimination Act would ordinarily not merit additional analysis, because the Ohio PDA is governed by the same principles that govern the federal claim of pregnancy discrimination. *E.g.*, *Birchard v. Marc Glassman, Inc.*, 2003 WL 21757771, at *2 (Ohio Ct. App. July 31, 2003) ("Case law interpreting and applying Title VII of the Civil Rights Act of 1964, § 701 et seq., as amended, 42 U.S.C.A. § 2000 et seq. ('Title VII'), is generally

11

No. 02-3172

prohibit discrimination because of pregnancy, Congress in 1978 passed the PDA, amending Title VII

to include discrimination on the basis of pregnancy within the category of unlawful gender

discrimination. *Ensley-Gaines v. Runyon*, 100 F.3d 1220, 1223-24 (6th Cir. 1996).

The PDA prohibits any adverse employment action in which pregnancy is among the factors

motivating the employer. Unlawful discrimination need not be the only reason for an adverse

employment action in order to violate Title VII, but rather need only be part of an employer's mixed

motive. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 240-41, 104 L. Ed. 2d 268, 109 S. Ct. 1775

(1989) ("The critical inquiry, the one commanded by the words of § 703(a)(1), is whether gender was

a factor in the employment decision at the moment it was made. . . . [W]e know that the words

'because of' do not mean 'solely because of' . . . ."). Yet the PDA does not categorically prohibit

the termination of pregnant employees who are unable to work. Rather, the PDA requires that a

pregnant employee "shall be treated the same for all employment-related purposes, including receipt

of benefits under fringe benefit programs, as other persons not so affected but similar in their ability

or inability to work . . . ."   42 U.S.C. § 2000e(k).

---

applicable to cases involving R.C. Chapter 4112."); *McConaughy v. Boswell Oil Co.*, 711 N.E.2d
719, 725 (Ohio Ct. App. 1998) ("federal case law interpreting Title VII of the Civil Rights Act of
1964, Section 2000e *et seq.*, Title 42, U.S. Code, is generally applicable to cases involving alleged
violations of R.C. Chapter 4112.") (citation and internal quotation marks omitted).
     Petitioner argues on appeal that her burden is much lighter under Ohio Admin. Code § 4112-
5-05(G), an Ohio PDA regulation that mandates leave for pregnancy-related medical conditions, than
under federal law. But Plaintiff failed to raise this issue below, and in general "[i]ssues not presented
to the district court but raised for the first time on appeal are not properly before the court." *J.C.
Wyckoff & Assoc., Inc. v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1488 (6th Cir. 1991) (citation
omitted).

12

No. 02-3172

In a Title VII case, a plaintiff bears the ultimate burden of persuading the factfinder that the defendant intentionally discriminated against the plaintiff. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). A plaintiff may carry this burden through direct evidence that in treating a plaintiff adversely the defendant was motivated by discriminatory intent, or by introducing circumstantial evidence that supports an inference of discrimination. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566-67 (6th Cir. 2001).

Where, as here, a plaintiff's evidence is circumstantial, the case proceeds through a three-step framework. First, the plaintiff bears the burden of making a *prima facie* showing by demonstrating that 1) she is a member of a protected class; 2) she was qualified for the job and performed it satisfactorily; 3) despite her qualifications and performance, she suffered an adverse employment action; and 4) she was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside her protected class. *Id.* at 567 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), as later clarified by *Tex. Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). If the plaintiff carries that burden, then, in the second step in the framework, the defendant faces a burden of production, to offer a legitimate, nondiscriminatory reason for the adverse employment action. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). If the defendant carries its burden, then, in the final stage in the process, the plaintiff may demonstrate to the factfinder that the defendant's proffered reason is a mere pretext for intentional discrimination. *Id.* at 142-43. The factfinder may consider the evidence and inferences from the plaintiff's *prima facie* case, along with other evidence. *Id.* at 143. In showing pretext, the plaintiff bears the burden of disproving the

13

No. 02-3172

defendant's proffered reason by a preponderance of the evidence. *Id.* Methods of disproving the defendant's reason include demonstrating that the reason 1) had no basis in fact, 2) was not the actual reason, and 3) was insufficient to explain the defendant's action. *Logan*, 259 F.3d at 567. To make a showing of pretext, in addition to disproving the defendant's stated reason, the plaintiff must also show by a preponderance of the evidence that the true motivation for the adverse employment action included intentional discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) ("a reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, and that discrimination was the real reason.") (emphasis in original).

Plaintiff makes out a *prima facie* case. Being pregnant, she was a member of the protected class under the PDA. She was qualified for the job and performed it satisfactorily, prior to the pregnancy. She suffered an adverse employment action, i.e., termination. She was replaced by someone outside of the protected class, Jerry Kamphaus. Defendant produced a legitimate, nondiscriminatory reason for the termination, stating that it was not possible to fill Plaintiff's position on a temporary basis. (Respondent's Brief at 14, 16-17.) From here, Plaintiff faced the burden of persuasion, to assert that the business reason offered was a false explanation and that Defendant's motives included discrimination because of pregnancy.

In ruling on the summary judgment motion, we may strongly doubt the veracity of Randy Overton's testimony as it relates to Defendant's proffered reason for the termination. However, our reason for devaluing the Overton testimony is the evidence Plaintiff adduced as to Overton's prejudice against individuals with lupus. Even when viewed in the light most favorable to Plaintiff, Overton's prejudice does not support any inference of discrimination against pregnant women.

14

No. 02-3172

Plaintiff must do more than show that Defendant's stated reason for the adverse employment action is false. Rather, in making the pretext argument, Plaintiff must also carry the burden of persuading the trier of fact that intentional discrimination was part of the employer's real motive for the adverse employment action. There is no evidence on the record to support an inference of intentional discrimination because of pregnancy. Plaintiff does not allege adverse treatment during either of the two prior pregnancies that she had while employed by Defendant. Plaintiff concedes that during her difficult 1995 pregnancy, Defendant had allowed her to take 128 days of leave and to resume her position after the leave, soon after which she was promoted. (Petitioner's Brief at 3.) There is not a genuine issue of material fact that might allow Plaintiff to show that Defendant intentionally discriminated against her on the basis of pregnancy. Summary judgment was appropriate on the PDA claim.

## CONCLUSION

There is a genuine issue of material fact as to whether medical leave would have constituted a reasonable accommodation of Plaintiff's disability, without posing an undue hardship for Defendant. Accordingly, we **REVERSE** the district court's grant of summary judgment to Defendant on the ADA claim. There are no genuine issues of material fact that could support a finding of discrimination on the basis of Plaintiff's pregnancy. Thus, we **AFFIRM** the district court's grant of summary judgment to Defendant on the PDA claim.

15